Lee VAN RALSTON,
Movant/Respondent,

v.

STATE of Missouri,
Respondent/Appellant.

No. 59710.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 31, 1991.

Motion For Rehearing and/or Transfer to Supreme Court Denied Feb. 10, 1992.

Diana Wagner, Asst. Pros. Atty., St. Louis, for respondent, appellant.

Peter M. Cohen, Asst. Public Defender, St. Louis, for movant, respondent.

PER CURIAM.

The court granted movant's Rule 24.035 motion and vacated his conviction and sentence. The State appeals; we reverse.

Movant pleaded guilty to two counts of sodomy, § 566.060, RSMo 1986, committed on a ten-year-old boy. He was originally charged with four counts of sodomy and one count of first-degree sexual abuse involving two brothers. Movant was charged as a persistent sexual offender under § 558.018, RSMo 1986, because he had pleaded guilty in 1983 to a sodomy charge, also involving a young boy.[1] If found guilty by a jury, movant thus faced mandatory consecutive sentences of 30 years each on the four sodomy charges for a total of 120 years without probation or parole. Sections 558.018.3 and 558.026, RSMo 1986.

Movant originally entered a plea of not guilty by reason of mental disease or defect. At defense counsel's request, the court ordered a mental examination. Movant was found to be competent to stand trial. In addition, the examining doctor found that movant understood the nature, quality and wrongfulness of his actions and that he was capable of conforming his conduct to the law. Defense counsel learned that movant had also had a mental examination when charged in the earlier case which had produced the same findings on these points. Counsel thus believed him to be competent and believed a defense of mental disease or defect would not be effective. He was also concerned that if movant went to trial with this defense, the portion of the report in this case that found movant to be a pedophile would be admitted.

During plea negotiations, movant rejected an offer to plead guilty to all five charges in return for a recommendation of sentence of five years on each count.[2]

However, following voir dire of the prospective jury, movant asked the State to reinstate the offer. The State agreed.

At the plea proceeding, the court questioned movant thoroughly regarding his understanding of his rights and the charges against him, his satisfaction with his lawyer and whether he performed the acts at issue. Movant admitted that he had touched the ten-year-old boy's penis on two occasions. He maintained his innocence on the other charges. The State then agreed to dismiss the other three charges in return for a plea of guilty on two sodomy charges and a recommended sentence of fifteen years on one count and ten years on the other count, to be served consecutively as required by law.

Questioning by the court revealed that movant had finished high school where he was enrolled in special education courses and that he had an IQ of between 69 and 74. Movant's mother, sister and pastor were present at the hearing and expressed their belief that movant should accept the plea bargain. Defense counsel stated that the deposition of the two boys had been taken. He testified at the postconviction hearing that he found both boys would be "effective" witnesses and that the ten-year-old boy was particularly "credible". The court accepted movant's plea and sentenced him in accordance with the plea agreement.

The court closely questioned movant regarding his satisfaction with defense counsel:

Q. He's talked to you, you talked to him and he's talked to members of your family about this plea of guilty, is that right?

A. Yes, Judge.

Q. And he's explained to you, has he not, the merits of going to trial and the merits of pleading guilty?

A. Yes, Judge, he has.

Q. I know he has because he's done it in my presence and you've talked. This isn't the first time you talked to him about this plea, is it, sir? I mean about

---

1. Movant had been sentenced to five years and granted probation in that case.

2. This agreement would require that the persistent offender allegation be dropped to avoid the mandatory 30 year sentencing provision of § 558.026, RSMo 1986.

this trial? I mean you've talked to him on a number of occasions?

A. We've been talking about it since it happened.

Q. ... Is there anything, Mr. Ralston, that Mr. Patton has done that you did not want him to do?

A. Not that I know of.

Q. Is there anything that you've asked him to do in connection with your case that he has failed or refused to do?

A. As far as I know he's done everything I asked him to do.

Q. ... Did you ever give him the name of witnesses that you asked him to look up or track down?

A. I gave him some names but I don't know.

Q. You gave him some names. Is that right, Mr. Patton?

MR. PATTON: Yes, Judge.

THE COURT: And you talked to these people?

MR. PATTON: Yes, Judge. Most of them had been subpoenaed.

Q. [by the Court]: And is there anything you want to say about the representation that Mr. Patton has done for you?

A. He's a good lawyer for all I know.

THE COURT: Okay.

A. The best there is, I think.

The court specifically found movant had effective assistance of counsel.

In his Rule 24.035 motion, movant alleged his plea was rendered involuntary due to ineffective assistance of counsel and due to coercion by the plea judge, plea counsel and members of his family. An evidentiary hearing was held and the motion court vacated the judgment and sentence. The motion court adopted movant's suggested findings of fact and conclusions of law. It thereby found movant's counsel ineffective for not requesting a second psychiatric examination and for not advising movant that by pleading guilty he forfeited a defense of not guilty by reason of mental disease or defect. It also found the plea was made under coercion by the plea judge and movant's relatives, and that movant lacked a full understanding of his rights and the consequences of his plea.

We will not disturb the findings and conclusions of the motion court on a Rule 24.035 motion unless they are clearly erroneous. *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986). The findings and conclusions are clearly erroneous only if after a review of the entire record we are left with a definite and firm impression that a mistake has been made. *Id.*

■■■ The State contends the motion court clearly erred in vacating the judgment and sentence in that movant's plea counsel's decision not to request a second psychiatric examination and his failure to advise movant of the possibility of a second examination did not constitute ineffective assistance of counsel. After a plea of guilty, the effectiveness of counsel is relevant only to the extent it affects the voluntariness of the plea. *Armour v. State*, 741 S.W.2d 683, 688 (Mo.App.1987). The two-part *Strickland* test applies to cases involving guilty pleas. *Hill v. Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370, 88 L.Ed.2d 203 (1985). To prevail on an ineffective assistance of counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A movant "must satisfy *both* the performance prong and the prejudice prong to prevail on an ineffective assistance of counsel claim." *Sanders v. State*, 738 S.W.2d 856, 857 (Mo. banc 1987) [emphasis in original].

■■■ In *Putney v. State*, 785 S.W.2d 562 (Mo.App.1990), the court found that defense counsel was not ineffective for failure to request a second mental examination after the first had indicated defendant was fit to proceed. Defense counsel could rely on the first examination in advising defendant to plead guilty. The court noted the defendant offered no evidence which would prove a second evaluation would have produced a different result. Similarly, an examination was performed in the present case and indicated movant was fit to proceed. The transcript from the evidentiary

hearing contains no evidence that a second psychiatric examination would have rendered a result different from the previous one. Movant offered nothing more than his testimony that he was enrolled in special education classes in high school. Some degree of mental retardation does not automatically render an individual incapable of entering a voluntary plea. *Pulliam v. State*, 480 S.W.2d 896, 904 (Mo.1972). Movant's plea counsel testified he did not seek a second examination for strategic reasons because such an exam might actually damage movant's case. Where there is no indication that an examination would provide beneficial information, counsel may decide as a matter of strategy not to seek one. *Schneider v. State*, 787 S.W.2d 718, 720 (Mo. banc 1990), *cert. denied*, — U.S. ——, 111 S.Ct. 231, 112 L.Ed.2d 186. There is a strong presumption that counsel's actions constitute sound defense strategy. *Childress v. State*, 778 S.W.2d 3, 6 (Mo.App.1989). Counsel's performance was adequate under the *Strickland* test. The record here does not support the motion court's conclusion that movant's plea counsel was ineffective in this respect.

■ Next, the State contends the motion court clearly erred in vacating the judgment and sentence due to the failure of defense counsel and the court to advise movant that by pleading guilty he was waiving the potential defense of not guilty by reason of mental disease or defect.[3] The testimony at the evidentiary hearing conflicted on this point. Defense counsel testified he advised movant on this issue; movant testified he did not. By adopting movant's suggested findings of fact, the motion court implicitly found defense counsel did not advise movant on this issue and we "must defer to the motion court's determination of credibility." *Perkins v. State*, 750 S.W.2d 594, 596 (Mo.App.1988).

Nonetheless, we find the State prevails on this point. Assuming *arguendo* that counsel's failure to advise renders his performance deficient, movant has suffered no prejudice under the second prong of the *Strickland* test. "To satisfy the prejudice requirement, a movant must show there is a reasonable probability that, but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial." *Perkins*, 750 S.W.2d at 596 [citation omitted]. In his amended motion to vacate the judgment, movant stated that he entered a plea of not guilty by reason of mental disease or defect at his arraignment. Thus, movant was aware of the defense when he later entered his guilty plea. His implicit contention now that he would not have entered a guilty plea if his counsel had informed him of a defense of which he was already aware is unconvincing. Movant knew he was foregoing a trial and the rights which accompany a trial.

■ Furthermore, movant failed to produce any evidence that he had a viable defense of mental disease or defect. The motion court's findings noted that defendant's mental examination report "found defendant fit to proceed and that he was capable of conforming his conduct to the requirements of the law and that he was capable of appreciating the nature, quality or wrongfulness of his conduct." Movant failed to rebut this, testifying only that he was enrolled in special education classes in high school. Counsel's failure to advise movant of a defense which would not help his case does not constitute prejudice. *Moore v. State*, 772 S.W.2d 800, 802 (Mo. App.1989).

■ The State also contends the motion court clearly erred in finding movant's plea was rendered involuntary due to coercion by the plea judge and movant's relatives. Here, the motion court found coercive the plea court's statement that it felt the guilty plea was in movant's best interests. When placed in context, however, the statement was not coercive:

3. In his memorandum supporting the motion to vacate judgment, movant's argument addressed the defense of mental disease or defect, but he erroneously labeled it as a defense of diminished capacity. A defense of diminished capacity is not applicable here because the offense of sodomy is a strict liability offense which does not require a culpable mental state. *State v. Beishir*, 646 S.W.2d 74, 77 (Mo. banc 1983).

[THE COURT]: Do you understand that even though you tell me you did this, if you want to go to trial you have a right to go to trial. Do you understand that nobody's bending your arm and making you plead guilty?

Everybody in this room, I think, thinks it's in your best interest to plead guilty, and that includes me, but that's a decision you have to make.

You understand nobody's twisting your arm there? We got these people over here who are ready to go to trial if that's what you want to do. Do you understand, Mr. Ralston?

A. Yes, I do.

Throughout the transcript, the plea court emphasized to movant his rights, including his right to go to trial, and that he should only plead guilty if that was his voluntary decision. The judge's statement was not coercive.

█ Neither did the presence and possible influence of mother and sister render the plea involuntary. In *Brown v. State*, 755 S.W.2d 414 (Mo.App.1988), we ruled that the encouragement of a mother to her son to plead guilty did not constitute legal coercion. We follow that result here.

The State argues the motion court clearly erred in finding that the guilty plea was not entered in conformity with Rule 24.-02(b), (c). The record makes clear the plea proceedings did comply with the rule. The rule requires the court to address movant to determine whether he understands the nature of the charges, the minimum and maximum possible penalty, his right to counsel, and his rights at trial. It must also determine whether the guilty plea is voluntary. The plea court here questioned movant extensively regarding the matters in the rule and determined from this that the guilty plea was voluntarily given. We also note movant is familiar with the plea process, having pleaded guilty before to a similar charge.

We have examined the record, including the evidentiary hearing transcript, and we hold the motion court clearly erred in va-cating the judgment and sentence of the plea court.

Reversed.