Matthew AMES, Movant–Appellant,

v.

STATE of Missouri, Respondent.

No. 21570.

Missouri Court of Appeals,
Southern District,
Division Two.

Nov. 25, 1997.

A. Renae Adamson, Asst. Public Defender, Columbia, for movant–appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Daniel W. Follett, Asst. Atty. Gen., Jefferson City, for respondent.

PARRISH, Presiding Judge.

Matthew Ames (movant) appeals the denial of his Rule 24.035 motion by which he sought to set aside his conviction for robbery in the first degree. This court affirms.

Movant was originally charged with robbery in the first degree and armed criminal action. At the initial arraignment, Peter Gullborg, a public defender, entered his appearance for movant. Following conversations with movant and a deputy sheriff who had investigated the case, and after reviewing material from the investigating officer's file, Mr. Gullborg formed an opinion that the evidence of the robbery charge "was fairly overwhelming." Mr. Gullborg learned, among other things, that the robbery victim had identified movant in a photo lineup.

At the time of the robbery, movant was on probation in a criminal case in Pemiscot County. He had another pending case, a felony stealing charge, in New Madrid County. Mr. Gullborg was representing defendant in the stealing case.

On the afternoon of March 18, 1996, after movant's arraignment, movant's attorney met with Deputy Sheriff Billy Hopkins. At that time there was a claim that movant had used a firearm in the course of the robbery. Movant disputed the claim.

Movant gave a statement to Officer Hopkins admitting that he committed the robbery and stating he had used a tire iron to break a car window, not a gun as had been claimed. The statement was witnessed by Mr. Gullborg and Officer Hopkins. Movant later waived preliminary hearing. When the state filed its information, it endorsed Mr. Gullborg as a witness.

Trial was scheduled for September 26, 1996. Movant was to be tried on both charges, robbery in the first degree and armed criminal action. On September 5 Mr. Gullborg filed a motion to withdraw as movant's attorney in the criminal case. Jane Dunn filed her entry of appearance the same day. She was the district defender. Mr. Gullborg was an assistant public defender who worked in her office.

On September 24 defendant, Mr. Gullborg and Ms. Dunn appeared before the trial judge. The state was represented by an assistant prosecuting attorney. Mr. Gullborg's motion to withdraw was granted and a motion to suppress evidence was filed. It was directed to movant's statement.

Later that day movant pleaded guilty to the robbery charge by means of an *Alford* plea.[1] The plea of guilty was based on a

---

1. In *North Carolina v. Alford*, 400 U.S. 25, 37–38, 91 S.Ct. 160, 167–68, 27 L.Ed.2d 162 (1970), a defendant in a criminal case who was faced with strong evidence of guilt pleaded guilty although

negotiated plea agreement. The terms of the agreement were that movant would be sentenced to 10 years' imprisonment for the offense of robbery in the first degree. The armed criminal action charge would be dropped. Movant's other pending case for stealing would be dropped. The sentence would run concurrent with a sentence in Pemiscot County for an offense for which movant was on probation.

Movant raises two allegations of error, both asserting claims of ineffective assistance of counsel in the underlying criminal case. Point I is directed to the representation he received from Ms. Dunn. Point II is directed to his representation by Mr. Gullborg.

■ This court's review is limited to determining whether the findings, conclusions and judgment of the motion court are clearly erroneous. Rule 24.035(k); *State v. Boyce,* 913 S.W.2d 425, 429 (Mo.App.1996). Findings and conclusions of the motion court are clearly erroneous only if a review of the entire record leaves the reviewing court with a definite and firm impression that a mistake was made. *Id.*

■ Point II asserts Mr. Gullborg's representation of movant was deficient in recommending that movant give a statement to law enforcement officials because the attorney "had not reviewed any discovery, had just entered the case, and was relying entirely on a police officer's interpretation of the facts of the case, and [movant] was thereby prejudiced because he felt he could not go to trial because of the confession."

Mr. Gullborg testified at the evidentiary hearing. He explained:

And then at that point in time, after thinking it over a bit that it was not—it was not in [movant's] advantage, at that point in time, to be adversarial is what my position was, which is why I was recommending him to give the statement. I was trying get [sic]—My hope was to get it reduced down to robbery two, in that the original information had included information about a gun. There had not been a gun involved, but rather a tire iron. And I was hoping that that would be—That that was what had driven—the fact there was a gun present, had driven [the prosecuting attorney] the [sic] file as robbery one rather than robbery two.

I thought that it fit the perimeters [sic] of a strong-arm robbery two better, and that was what my hope, that a statement would show is that Matt was not being adversarial. He was admitting that he had done it. He—He actually, at that time, was remorseful about it, not for the fact that he was actually in custody, but he was regretting what he'd done, and I was hoping that with the robbery two also we would possibly be able to get him into the two-year cocaine rehab program because he was not possible to get into that with robbery—with robbery one with a plea on that.

The motion court found:

Peter Gullborg was the attorney for movant in the pending felony stealing charge at the time movant was charged with robbery. He undoubtedly knew that movant was on probation in the Pemiscot County case. He concluded that it was in the best interest of movant to persuade the State that movant had been armed with a tire tool rather than a firearm. Because of the evidence against movant in the robbery case, he properly decided that it would not be in the best interest of his client to adopt an adversarial posture in the beginning of the case. His initial strategy was to attempt to obtain a reduction of the charge to robbery in the second degree and avoid the effect of the 85 percent statute.[2] He

he professed the belief that he was innocent. The court held it was not constitutional error to accept a plea under those facts; that under those circumstances, it was reasonable for a defendant to plead guilty in order to limit the penalty he might otherwise receive if he went to trial. *Id.* at 37, 91 S.Ct. at 167.

**2.** § 558.019.3, RSMo 1994, provides that any defendant who has pleaded guilty or been found guilty of a dangerous felony as defined in § 556.061, and is committed to the department of corrections, shall be required to serve at least 85% of the sentence imposed. Robbery in the first degree is one of the offenses defined as a "dangerous felony" by § 556.061. The statute does not define robbery in the second degree as a "dangerous felony."

made no promises to movant such result would occur, and he did not mislead movant. When the disposition of the four charges to which movant was subject is considered, the Court finds that the defense strategy was at least partially successful. The fact that the State would not reduce the charge to robbery in the second degree does not render the assistance ineffective. An objective consideration of all the circumstances leads to the conclusion that there was a favorable disposition of movant's cases. Movant was not prejudiced by the actions of this attorney.

■ "After a plea of guilty, the effectiveness of counsel is relevant only to the extent it affects the voluntariness of the plea." *Van Ralston v. State*, 824 S.W.2d 75, 78 (Mo.App.1991). Inquiry concerning an attorney's performance is whether, considering all the circumstances, the assistance was reasonable. *Childress v. State*, 778 S.W.2d 3, 6 (Mo.App.1989). Trial strategy does not provide a basis for an attack on the effectiveness of trial counsel. *State v. Boyce, supra*, at 430. A trial attorney has the right to select the strategy he believes is best suited for his or her client's case. *State v. Anthony*, 881 S.W.2d 658, 661 (Mo.App.1994). "There is a strong presumption that counsel's actions constitute sound defense strategy." *Van Ralston, supra*, at 79.

The motion court concluded that upon considering all circumstances, there was a favorable disposition of movant's case; that movant did not receive ineffective assistance of counsel from Mr. Gullborg. That determination is not clearly erroneous. Point II is denied.

■ Point I contends movant received ineffective assistance of counsel from Ms. Dunn; that she "was necessarily caught between her obligation to represent [movant] and her need to justify her office's conduct as legal and ethical, thus creating an actual conflict of interest which adversely affected her representation of [movant] because Dunn never litigated [movant's] motion to suppress which alleged Gullborg's improper advice to [movant] to confess rendered his confession involuntary."

■ In order for movant to be entitled to relief, he was required to show an actual conflict of interest that adversely affected Ms. Dunn's performance as his counsel. *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *State v. Wright*, 934 S.W.2d 575, 581 (Mo. App.1996). He was required to show that Ms. Dunn either did something or failed to do something that resulted in a detriment to him. *State v. Abbott*, 654 S.W.2d 260, 274 (Mo.App.1983).

At the beginning of movant's guilty plea hearing in his criminal case, his attorney announced that movant desired to withdraw the not-guilty plea he had previously entered "and enter a plea pursuant to the Supreme Court case *Alford vs. North Carolina [North Carolina v. Alford]*." The judge observed, "Before we proceed with that, Ms. Dunn, on behalf of her client earlier today filed a Motion to Suppress statements given by the [movant]." He inquired, "Does the [movant] wish to withdraw that motion at this time." Ms. Dunn answered that he did.

The trial judge then addressed movant:

All right. The [movant] will withdraw his Motion to Suppress, and, Mr. Ames, your Attorney tells me that as to this Count I charge of robbery in the first degree, now you wish to withdraw your not guilty plea and here today you wish to plead, or, let me go back. That now you wish to enter what we refer to as an *Alford* Plea or a plea pursuant to the Supreme Court case of *Alford vs. North Carolina [North Carolina v. Alford]*; is that correct?

Movant's attorney answered, in his presence, "That's correct." The trial judge then asked movant if it was his decision to enter the plea at that time. Movant answered, "Yes, it is." The trial judge then explained in considerable detail what an *Alford* plea was. He concluded by asking, "[D]o you understand that when we conclude the hearing, the Court will make a finding of your guilt."

Movant asked, "Okay, the Court will have to make a finding of my guilt?" His attorney answered:

Basically what he's saying is that the Prosecutor is going to read the facts of the case and the Judge is going to verify that there was a likelihood that if it were to go to trial based on those facts you would be convicted. That is basically going to be his finding of guilt.

The trial judge asked movant if he understood what his attorney had told him. Movant answered that he did. Movant was again asked if it was his decision to enter the *Alford* plea. He answered that it was.

The trial judge then explained that the range of punishment for robbery in the first degree was confinement for "a term ... of not less than 10 nor more than 30 years or a life term of imprisonment." He asked movant, "[D]o you understand that?" Movant answered, "Yes, sir."

The trial judge explained further, "And do you understand that any sentence to be imposed as to this charge would be subject to you serving 85 percent of that sentence before you will be eligible for parole; do you understand that?" Movant answered, "Yes, sir, yes, I do."

After explaining movant's right to a trial and his rights to call witnesses, cross-examine opposing witnesses, to not be required to testify against himself, his right to have the question of guilty determined by a jury, his right to have legal counsel, and his right to appeal if found guilty, the trial judge turned to the question of movant's satisfaction with the attorneys who had represented him. Movant was asked if he was satisfied with the legal representation he had received. He said he was not.

The trial judge asked movant what the problem was. He complained that he had been advised "at the time Mr. Gullborg was [his] attorney" to give a statement "knowing full well that [he] was still under the influence of residuals of drug use." He added, "And the fact that Ms. Dunn did step in as my attorney in a later part of these hearings, I don't think she had adequate time to prepare herself."

Movant was asked if there was anything he wanted Ms. Dunn to do that she refused to do. He answered, "Not that I know of." The trial judge then told movant:

Okay, and, let's go over the charge with you at this time, Mr. Ames. And I want to tell you at this time that if you do not wish to enter this plea here today, this case, you know, you're certainly welcome to go to trial on Thursday; do you understand that? I mean, I don't want to force you in any way to enter any type of plea that you don't want to make here today. Ms. Dunn, I know, has done a considerable amount of work. She's subpoenaed witnesses, she's taken statements or people from her office have taken numerous statements from individuals who you've requested that she go out and talk to, and she's prepared to represent you at trial. And, if you don't want to enter this plea here today, I don't want you to enter this plea here today. Now, this is up to you. Do you want to proceed with this plea hearing?

Movant answered, "Yes." The trial judge then read the charge, Count I of the information, to movant, adding, "Now, do you understand this charge of robbery in the first degree that I just read to you in Count I?" Movant answered that he did. He was asked if that was the charge to which he wished to enter his *Alford* plea. Movant answered that it was; that he was entering the plea of his own free will because he believed it was in his best interest to dispose of the case that way.

The assistant prosecuting attorney explained the facts the state would prove if the case were tried. Movant was then asked if he was entering his *Alford* plea based on the evidence the prosecutor had outlined. Movant answered, "Yes."

The trial judge asked if the case was "a plea-agreement case." The prosecutor answered:

Yes, Your Honor. The State would recommend a sentence of 10 years in the Department of Corrections on Count I, the robbery count, Your Honor, and has agreed to dismiss the armed criminal action complaint, and also it will dismiss the stealing charge in Case No. CR296–101F, Your Honor, as part of that, and this time

would run concurrent with the probation that he is now on out of Pemiscot County.

Movant was asked if he understood the prosecutor's recommendation. He answered, "Yes, sir." The trial judge then inquired, "And are you asking me to follow that recommendation?" Movant answered, "Yes, sir." After further inquiry concerning the voluntariness of the plea, the trial judge accepted the plea. Movant waived pre-sentence investigation. Allocution was granted and sentence was imposed in accordance with the negotiated plea agreement.

After pronouncing sentence the trial judge examined movant as required by Rule 29.07(b)(4). Movant again expressed dissatisfaction with his attorneys. The trial judge asked if his dissatisfaction was "that you were concerned about Mr. Gullborg in talking to you or allowing you or advising you about making a statement to the police." Movant told the judge that was correct. He was asked if there was anything else he wished to bring to the judge's attention about the legal representation he had received. He answered, "Not to my knowledge."

The trial judge inquired further with respect to Ms. Dunn's representation. Movant said he was not entirely satisfied with her representation of him. He was asked what problems he had. He answered he believed it was a personality conflict. His complaint was, "[T]here was a couple of instances that Jane did refer to me as being stupid and foolish and I don't think that's proper for my attorney." Movant was asked if there was anything else concerning Ms. Dunn's representation of him. He answered, "No, sir." The trial judge concluded that no probable cause existed that movant received ineffective assistance of counsel.

■ Here, as in *Nolan v. State*, 734 S.W.2d 604 (Mo.App.1987), the record of the guilty plea hearing makes clear that movant traded the possibility of greater sentences for the certainty of the one provided by his negotiated plea agreement. He accepted the certainty that he would receive the minimum

sentence available for robbery in the first degree, 10 years' imprisonment,[3] which would run concurrent with the sentence in the case in which he was on probation, and dismissal of his pending stealing charge rather than risking conviction for the robbery offense, armed criminal action, the stealing offense and the possibility that any punishment imposed would run consecutive with his Pemiscot County conviction.

■ The act that movant contends was detrimental to his interests was the withdrawal of the motion by which he sought to suppress the statement he gave to law enforcement personnel. The motion court concluded with regard to this issue:

The sentencing court found the plea to have been made voluntarily and with a full understanding of the consequences of the plea. Movant heard his attorney withdraw the motion to suppress before he pleaded, and he made no protest. He waived his right to object to the failure to proceed with the motion to suppress, and he is not entitled to any relief on any of his claims concerning the motion to suppress.

Movant did not prove that Jane Dunn had a conflict of interest, or even a substantial possibility of a conflict. Nor did he prove that because she was the superior of Attorney Gullborg, this relationship affected the manner in which she handled the case. Movant is not entitled to any relief on the complaints about a conflict of interest.

■ An allegation of ineffective assistance of counsel directed to failure to file a motion to suppress evidence made after a guilty plea states no basis for relief. *Smith v. State*, 937 S.W.2d 339, 342 (Mo.App.1996); *Williams v. State*, 765 S.W.2d 392, 393 (Mo. App.1989). Likewise, a plea of guilty after a motion to suppress evidence has been filed and heard, but prior to there being a ruling on the motion, is a waiver of a complaint that trial counsel's assistance was deficient for not securing a ruling on the motion when a movant was aware of those facts when pleading guilty and voluntarily entered that plea.

---

**3.** The range of punishment for robbery in the first degree, a Class A felony, is "a term of years not less than ten years and not to exceed thirty years, or life imprisonment." § 558.011.1(1), RSMo 1994.

Gooden v. State, *846 S.W.2d 214, 217 (Mo. App.1993)*. *The motion court's finding, under the facts of this case, is consistent with the holdings in* Smith, Williams *and* Gooden.

The motion court's conclusion that movant's plea was voluntarily made; that he waived his right to object to the withdrawal of his motion to suppress by failing to object during the course of the proceedings on his *Alford* plea, are not clearly erroneous. Likewise, the motion court's determination that movant did not prove Ms. Dunn had a conflict of interest is not clearly erroneous. The judgment dismissing movant's Rule 24.035 motion is affirmed.

MONTGOMERY, C.J., and BARNEY, J., concur.